ROBERT REINER, INC. *v.* UNITED STATES

and

UNITED STATES *v.* ROBERT REINER, INC.

No. 5579.—Invoice dated Einsiedel, Germany, July 30, 1938.
Entered at New York, N. Y., August 20, 1938.
Entry No. 4021.

Third Division, Appellate Term

(Decided February 19, 1942)

*Benjamin A. Levett* for the importer.

*Paul P. Rao,* Assistant Attorney General *(Dorothy C. Bennett,* special attorney), for the United States.

Before CLINE and KEEFE, Judges

KEEFE, Judge: This is an application for a review of the findings of the trial court, sitting in reappraisement, as to the proper dutiable

value of a machine known as a "legger," a part of a hosiery machine used for making the legs of hosiery. The machine was imported in a knocked-down condition and in its imported condition it was not complete and could not be operated because of the absence of certain parts supplied by the importer. The importer sold these machines together with a "footer" and certain mechanical operating equipment manufactured in the United States at a price set up in the factory of his purchasers. It was conceded that there was no foreign nor export value, the importer being the sole agent in the United States of the foreign manufacturer.

The merchandise was invoiced at 16,725 reichsmarks, packed, equivalent to United States $6,690. The importer entered the machine upon the basis of the United States value at $5,185, but it was appraised at 16,725, reichsmarks, packed, and the appraiser indicated that such price represented the cost of production.

Upon the evidence presented the trial court found that there was a United States value for the machine and that such value was $5,661.86, derived from the United States selling price of $8,955 as follows:

| | |
|---|---|
| United States selling price | $8, 955. 00 |
| Less 8% general expenses | 716. 40 |
| | 8, 238. 60 |
| Less ocean freight and insurance | 312. 00 |
| | 7, 926. 60 |
| Less duty (7,926.60÷1.40) | 2, 264. 74 |
| United States and dutiable value | $5, 661. 86 |

The Government, as well as the importer, appealed for a review of the findings of the trial court. The importer contended that an improper deduction for duty had been made. Later, however, it was conceded that the appeal was filed for the protection of the interests of his client. The Government contends that the trial court erred in manner following: First, that no United States value exists for the merchandise because there was an absence of previously imported "leggers" of the particular size and gauge of the imported machine on the date of exportation of the involved merchandise available in the United States to be freely offered for sale, or sold to all purchasers; Second, that no United States value exists as the "leggers" were in a knocked-down condition rather than complete machines and cannot be used in their imported condition; Third, that previously imported "leggers" were offered for sale in the United States together with a complete hosiery machine, erected in a manufacturing plant, and that such machines were composed of parts manufactured in the United States as well as of foreign manufacture and that a breaking-down of

the price of a complete hosiery machine, installed in the purchaser's plant, does not constitute a bona fide offer sufficient to support a finding that a United States value exists; Fourth, that a United States value cannot be found for this machine because all of the sales in the United States were made to consumers in quantities of one machine, which is not a wholesale quantity, inasmuch as there must be first a wholesale quantity established from a wholesale transaction before all sales made at wholesale, retail, or to consumers in that quantity may be considered in arriving at a value; and Fifth, that in the event the court finds the existence of a United States value, the trial court improperly computed United States value, upon the basis of $8,955, when the documentary evidence establishes that the price at which the machine was sold to the consumer was $8,990.

Two witnesses testified for the importer. Such testimony is set out in detail in the decision of the trial court and it is unnecessary to again so relate it here. Five exhibits were admitted in evidence including a report of a customs agent who had examined the books and papers of the importer. From an examination of the invoice and entry papers and the evidence submitted, we find that on August 3, 1938, the involved 45-gauge, 24-section "legger" was exported from Germany. It was entered at New York on August 20, 1938, and after a preliminary examination at the wharf was designated for examination for appraisement purposes at the plant of the Caswell Knitting Mills in Yanceyville, N. C. Seven days before the date of shipment of the involved "legger," to wit, July 27, 1938, the importer offered to deliver to the Graham Full Fashion, Inc., of Graham, N. C., two 45-gauge, 24-section "leggers," identical with the machine here imported, for the sum of $8,990 each, f. o. b. New York harbor. If desired by the purchaser, the importer further offered to sell certain attachments which would also be separately delivered to the company and to erect the machines at an additional cost, totaling in all $1,755, and in the event of the acceptance the total contract price for the machines, including the attachments, motor, etc., would be $10,745, erected at the company's plant. On July 30, 1938, a conditional contract of sale was entered into between the importer and the Graham Full Fashion, Inc., for the purchase of the two leggers covered by the offer of July 27, and it was agreed that one legger would leave the German factory in August and another in October of the year 1938. The title to the "leggers" was to remain in the seller until fully paid for. However, a 45-gauge, 24-section "legger" arrived in New York harbor on July 29, 1938, which was subsequently shipped to the said Graham Full Fashion, Inc., in pursuance to the contract of conditional purchase. It does not appear that said "legger" had been originally imported by plaintiff to fill the order of any particular purchaser.

The evidence further discloses that the importer orders a quantity of machines at one time; that these imported machines weigh 4 tons each and are imported in a knocked-down condition, and in such condition are shipped directly from the wharf at New York, the port of entry, to the firm purchasing the same without being opened or repacked; that the machines are purchased by the importer who directs their delivery to the firm or firms entering into agreements of purchase, nothing appearing upon the invoice papers dedicating any imported machines to a particular consumer; that the machines are offered for sale in their imported condition in quantities of one and a sale of a larger quantity brings no reduction in price; that the machines so sold are usually desired set up and completed by the importer at an increased cost, but that one machine in the year 1937 was sold without additional attachments; that such machines have been sold in the United States since 1922 and that there has not been any change in the price thereof in the year previous to the July importation.

The first question presented by the Government is whether or not the "legger" imported into the United States on July 29 may be considered as prototype merchandise and the price at which such merchandise was freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, may be taken as the basis for determination of the United States value of merchandise shipped on August 3, under circumstances following: First, that an offer for sale of a machine of identical description was made on July 27, and accepted, and a conditional sales contract entered into on July 30, 1 day after the importation of the prototype merchandise; and Second, that although the "legger" imported on July 29 was not contemplated under the terms of the conditional sales agreement as one of the leggers being sold under such offer and acceptance, such imported "legger" was subsequently delivered in partial fulfillment thereof.

In support of Government's contention counsel relies principally upon the case of *United States* v. *Collin & Gissel*, 29 C. C. P. A. 96, C. A. D. 176; and *Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, C. A. D. 48. In the *Stern Hat* case, the appellate court observed that:

None of the sales upon which the Government relies to furnish a basis for ascertaining United States value of the involved merchandise were of imported merchandise. * * *

It is only the sale of merchandise imported previous to the date of exportation of the merchandise being appraised that can be resorted to as a basis for arriving at the United States value of such merchandise.

The court held that sales of similar merchandise for future delivery, made on or about the time of the exportation of merchandise there

involved, were not a proper basis for arriving at United States value of the merchandise there involved, and that only sales of merchandise imported previous to the dates of exportation of the merchandise being appraised can be resorted to as the basis of United States value.

In the *Collin & Gissel* case, the machine there involved was shipped from abroad on July 11, 1934. At the time of such exportation there were no prototype machines in the United States and none was received until a week later. Therefore at the time of exportation there was not any similar imported machine available to be freely offered for sale. The appellate court stated:

No imported machine was in the United States available to be offered for sale by the importer at $5,500, or at any other price, on July 11, 1934, the date of exportation of the involved machine, *nor at any time near that date.* * * * there being no prototype machine in the United States at or near the date of exportation of the involved machine available for offer, a fundamental element of United States value, as defined by the statutes, was lacking. [Italics not quoted.]

In the case at bar the prototype machine was in the United States prior to the shipment of the merchandise to be appraised and an offer for sale had been made at or near the date of shipment of a machine of like description and price and the previously imported machine was used in partial fulfillment of the contract of sale. Consequently the cases relied upon by the Government are not in point in the case at bar.

The Government's contention that prototype machinery in a knocked-down condition and not complete and ready for use is not available as a measure of value of the machine imported herein is without merit because the machine imported is likewise in a knocked-down condition and the value thereof is to be determined in its imported condition. Therefore the measure of value of such a machine would be a previously imported machine in the same condition. The appraiser in finding the value thereof at the invoiced price has clearly recognized such basis of appraisal. The case of *Draeger Shipping Co.* v. *United States,* Reap. Dec. 4870, affirmed in Reap. Dec. 5118, cited in support of such contention is not in point. In that case certain calculating machines were imported in a knocked-down condition and in the same shipment there were other calculating machines imported set up and ready for use. The machines regardless of their imported condition were invoiced and entered at the same price, to wit, the United States value of the set up machines in the United States. The court found that the United States value was based upon the price of the set-up machine and not at the value of the machine in the knocked-down condition and therefore the knocked-down machines were reappraised upon the basis of the cost of production. The evidence established that the knocked-down machines were sent to the importer's factory and there set up and put in the

same condition as the other machines which were imported ready for use. The court there held that United States value of the knocked-down machines must be based upon sales of the same or similar merchandise at the time of exportation of the goods and could not be based upon sales of completed machines, inasmuch as it was not established that the imported sets of parts of machines were not sold or offered for sale at or prior to the dates of exportation in a knocked-down condition.

The Government contends that a sale to a consumer of one machine is not a wholesale transaction because there must be established first a wholesale quantity from a wholesale transaction before all sales made at wholesale, retail, or to consumers in that quantity may be considered in arriving at a value, citing *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747, *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. 214, T. D. 48060, and *United States* v. *Ash*, 23 C. C. P. A. 360, T. D. 48211.

In the *Keve & Young* case the sale of certain letterpress-copiers was controlled by the manufacturer so as to eliminate completely the intervention of wholesale and retail dealers. Great Britain was divided by the manufacturer into 17 sales districts for sales to the ultimate consumers. By selling directly to the consumer the manufacturer realized a profit of 35 per centum, including a manufacturer's profit and distributor's profit. All sales in Great Britain were made at the list price directly to the consumer in single units for use and there were no sales in wholesale quantities for resale. However, machines were sold wholesale and in quantities of more than a single unit to dealers in Ireland and for export to other countries. The court stated that inasmuch as "*they are so sold* definitely establishes not only that a single unit is not *per se* a wholesale quantity," but that sales in Great Britain in single units are not wholesale transactions. The court also stated that wholesale prices fix the value of goods in the wholesale market "but just how such wholesale price could be the standard of value for the retail market is not clear," inasmuch as such retail price was not the price which the seller, shipper, or owner would have received and was willing to receive for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities in such market. In reaching the conclusion that the price at which the merchandise was sold to retailers in quantities of one was not to be considered as the wholesale price for duty purposes the court took into consideration that there were wholesale sales made in quantities of more than one to dealers in Ireland and also to foreign countries.

In the case of *United States* v. *Livingston & Southard, supra,* certain rotoscopes were appraised on the basis of the foreign value. The shipper sold identical rotoscopes in the home market in retail quanti-

ties of one directly to the consumer. There was also evidence of sales in the home market for export, to wit, for six machines, three machines, and two sales of two machines each. The Government contended that the selling price of one machine should be held to be sales in the usual wholesale quantity. The court stated that while it is true that in some cases the sale of a single article may be regarded as a sale in a wholesale quantity, the evidence established that such sales in the home market were made in retail quantities of one directly to the user, and when there were offers and sales in quantities of more than one the appellate division was warranted in holding that offers for sale of one were offers in retail quantities and not wholesale quantities. Where sales are made at wholesale the appellate court stated it is definitely established that a single unit sold at retail is not a wholesale quantity, and it was held that the price of the major portion of unrestricted sales or offers for sale, in wholesale quantities of more than one and less than six were the usual quantities for determination of value.

The foregoing decisions are therefore not intended to hold that sales to consumers in quantities of one are retail sales which may not be used as a measure of value, but rather such decisions establish that when there are wholesale transactions in a market where merchandise is freely offered for sale in quantities of more than one, sales to consumers in quantities of one may not be regarded as a measure of value.

In respect to the fifth contention of the Government that the trial court improperly computed United States value upon the basis of $8,955 rather than upon $8,990, we find that the evidence fully establishes that offers for sale or prototype merchandise were made and accepted upon the basis of $8,990 rather than upon the basis of $8,955.

From a consideration of the record before us and for the reasons stated we find as facts that:

1. The imported merchandise consists of a so-called "legger" machine imported in a knocked-down condition exported from Germany August 3, 1938.

2. Such machines were freely offered for sale in the condition imported in quantities of one or more to manufacturers of hosiery and that offers in units of more than one were made at the same price as an offer of one unit.

3. At the time of exportation of the machine involved herein no foreign or export value existed.

4. At the time of exportation of said machine there was in the United States a prototype machine, packed ready for delivery, which at or near the time of such exportation was freely offered for sale in

the ordinary course of trade to all purchasers in the United States, f. o. b. New York at the basic price of $8,990.

5. The ocean transportation and insurance was uniform for these machines and amounted to $312.

6. The allowance for general expenses was 8 per centum of the basic price of $8,990.

7. No profit accrued to the importer from either the sale of the prototype machine or the machine here imported.

From such facts, we hold that the decision of the trial court holding there is a United States value for the imported machine is sustained; the decision of the trial court as to the United States selling price is modified. Therefore, as a matter of law, we hold that the dutiable value of the merchandise is to be determined from the United States selling price as follows:

| | |
|---|---:|
| United States selling price | $8, 990. 00 |
| Less 8% for general expenses | 719. 20 |
| | 8, 270. 80 |
| Less ocean freight and insurance | 312. 00 |
| | 7, 958. 80 |
| Less duty ($7,958.80÷1.40) | 2, 273. 94 |
| United States and dutiable value | $5, 684. 86 |

Judgment will be entered accordingly.